UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHEN DIVISION

RONNIE WHITE                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:15cv153-DPJ-FKB

CITY OF RICHLAND, MISSISSIPPI                                   DEFENDANT

ORDER

This employment-discrimination case under Title VII and 42 U.S.C. § 1981 is before the

Court on Defendant the City of Richland, Mississippi's ("City") Motion for Summary Judgment

[23]. The Court, having duly considered the parties' briefs and the record evidence, finds that

the Motion should be granted.

I.      Facts and Procedural History

Plaintiff Ronnie White, an African American, was initially hired by the City as a part-

time police officer with the Richland Police Department ("Department") in 2006. Two years

later, in September 2008, the City hired White as a full-time patrol officer. Plaintiff's

employment troubles giving rise to this lawsuit stem from a July 18, 2013 incident in which he

got into an argument with his girlfriend, Keisha McLaurin, while he was off duty, and then

became involved in a fight with another individual at a residence in Rankin County, Mississippi.

Def.'s Mem. [24] at 1–2; Pl.'s Mem. [27] at 1.

At some point during the evening of July 18, White went to McLaurin's residence and

the two began arguing. Although White acknowledges that he had consumed some alcohol prior

to the argument, the amount of alcohol and time period during which he consumed it remains

unclear. *See* White Dep. [23-1] at 41–43. According to McLaurin, White destroyed or damaged

her personal property by punching holes in her outdoor grill, cutting the power cord to her

freezer, pouring alcohol on the walls and other items, and breaking her satellite DVR. McLaurin Statement [23-2] at 1–2; Hirschfield Decl. [23-3] at ¶¶ 3.

At some point after the argument, McLaurin departed from her residence and drove to her mother's home. Shortly thereafter, White followed McLaurin in his vehicle, and while en route, was involved in a single-car accident. White abandoned his vehicle and continued to follow McLaurin to her mother's residence on foot. White Dep. [23-1] at 50–54. Upon arriving at the residence, White observed McLaurin and another man, Johnny Easterling, in the yard and a fight ensued. Once it ended, McLaurin drove White to his home, and upon exiting the vehicle, he took her state-issued work radio with him. *Id.* at 60–63, 73.

Several days later, Easterling filed felony assault charges against White, and Lieutenant Aaron Hirschfield, another officer within the Department, began an internal investigation into the incident. Def.'s Mem. [24] at 4; Pl.'s Mem. [27] at 2. Interviews conducted during the investigation revealed that White had been the aggressor in his fight with Easterling and that White had been consuming alcohol prior to operating his vehicle that evening. Additionally, Hirschfield conducted three interviews with White and found that he was "uncooperative, refused to provide logical and coherent responses . . ., and refused to participate in the investigation in a meaningful way." Hirschfield Decl. [23-3] at ¶¶ 3–4. Following the investigation, White was given the option to resign or be terminated. He refused to resign and was terminated for conduct unbecoming of an officer and for failing to cooperate in the investigation. Def.'s Mem. [24] at 4; Pl.'s Mem. [27] at 2.

On August 29, 2013, White filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging unlawful race discrimination in violation of Title VII of the

2

Civil Rights Act of 1964.  Compl., Ex. A [1-1].  He received a right to sue letter on December 4, 2014, Compl., Ex. B [1-2], and filed suit in this Court on March 2, 2015.  After discovery, the City filed the instant Motion for Summary Judgment [23], which is now fully briefed.  The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

        Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

        The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The non-moving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic

arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam).

III.     Analysis

        In this action, White asserts race-discrimination claims under Title VII and 42 U.S.C. § 1981 based on allegations that the City unlawfully terminated his employment because he is an African American.  The summary-judgment analysis is the same for race-discrimination claims under both Title VII and § 1981. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004).  Claims for discrimination based on circumstantial evidence under both causes of action are analyzed under the *McDonnell Douglas* burden-shifting framework. *Id.*  To survive summary judgment, the plaintiff must first establish a prima facie case of racial discrimination. *Id.* at 317; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  To do so, the plaintiff must show that:  (1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) he was the subject of an adverse employment action; and (4) he was replaced by someone outside the protected class, or in the case of disparate treatment, he was treated less favorably than similarly situated employees under nearly identical circumstances. *See Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001).

        If the plaintiff successfully establishes a prima-facie case, discrimination is presumed and the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *Lee*, 574 F.3d at 259.  If that burden is met and "the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears

and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination." *Davis*, 383 F.3d at 317. "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Reeves*, 530 U.S. at 143) (additional citation omitted).

The City concedes that White has "likely" established a prima-facie case, but argues it terminated his employment for legitimate, non-discriminatory reasons and he therefore cannot demonstrate pretext. Def.'s Mem. [24] at 6. Specifically, the City contends that it fired White for conduct unbecoming of an officer—including assaulting Easterling, consuming alcohol before operating his vehicle, and damaging McLaurin's home and property—as well refusing to cooperate or participate in the investigation into his actions. *Id.*

White, ostensibly acknowledging that the City has met its burden of articulating a legitimate, non-discriminatory reason for his discharge, argues in response that he can establish pretext based on disparate treatment of a similarly situated white officer. To this end, he offers evidence that Heath Grice, a white police sergeant, stole ammunition from the Department in January 2012, but was only suspended for three weeks without pay. Pl.'s Resp. [26] at 4; White Aff. [26-2] ¶¶ 2–4. Although White acknowledges that this is a different offense than the one he committed, he contends that the difference does not fairly account for or justify the disparate treatment. *Id.*

"To establish disparate treatment, a plaintiff must demonstrate that a 'similarly situated' employee under 'nearly identical' circumstances, was treated differently." *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (citing *Mayberry v. Vought Aircraft Co.*, 55 F .3d 1086,

1090 (5th Cir. 1995)).  In other words, White must show "that the misconduct for which [he] was discharged was nearly identical to that engaged in by . . . [other] employee[s]." *Okoye*, 245 F.3d at 514 (some alterations in original) (citations and internal quotation marks omitted).  "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee* 574 F.3d at 260.  The degree of similarity of employee violations "may turn on the 'comparable seriousness' of the offenses . . ." *Id.* (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)).

Here, White argues that Grice, the proposed comparator, faced substantially more lenient punishment for a similar infraction and that a reasonable jury could conclude that the City's decision to treat the officers differently was based on race.  *See* Pl.'s Res. [26] at 4–5.  This argument falls short, however, because White has failed to offer sufficient evidence to demonstrate that Grice was similarly situated and that their circumstances were "nearly identical."  In fact, the only record citation in this portion of White's Response is to his own affidavit, which is silent as to the two officers' respective job responsibilities, supervisors, violation histories, or other facts essential to determining whether they were similarly situated at the time of their infractions.  *See* White Aff. [26-2].

And despite White's attempt to characterize the Grice's circumstances as comparable, there are numerous differences between their job responsibilities within the Department and the conduct giving rise to their sanctions.  First, Grice was employed as a sergeant, whereas White was a patrol officer.  The uncontroverted record evidence indicates that sergeants rank higher

within the Department hierarchy than patrol officers and "often have supervisory duties and report directly to the Chief or Assistant Chief whereas Patrol Officers do not have supervisory duties . . . [and] report directly to the Seargeant or Lieutenant . . . ." James Decl. [27-2] ¶ 3.  So while both individuals were employed by the Department, they neither occupied the same position nor shared the same responsibilities or supervisors.

Second, the conduct for which Grice and White were disciplined cannot be described as "nearly identical."  White was terminated by a vote of the City's Board of Aldermen for "conduct unbecoming of an officer and for failing to cooperate with the internal investigation into his alleged actions."  James Aff. [23-4] ¶ 2; *see also* Board Minutes [23-5].  The investigation conducted by Lieutenant Hirschfield indicated that White consumed alcohol before operating a vehicle, assaulted a member of the community, and damaged or destroyed another individual's home and property.  Hirschfield Decl. [23-3] ¶ 3.  He was also uncooperative and refused to participate in the Department's investigation of the incident.  *Id.* ¶ 4.  White fails to cite any evidence contradicting these facts.

Grice, by comparison, allegedly broke into a vehicle owned by the City and stole ammunition.[1]  White Aff. [26-2] ¶ 2.  Although this is a serious offense, no reasonable juror could find that it rises to the same level of severity as White's misconduct.  Grice was not accused of driving while under the influence of alcohol, assaulting a citizen, or destroying someone's property.  And, according to White's own affidavit, Grice admitted to the theft and "told investigators that . . . he would tell them everything."  *Id.* ¶ 3.  So unlike White, Grice

---

[1]Notably, White testified in deposition that another officer was involved in this incident and that he eventually resigned, but he has not been offered as a comparator.

cooperated with investigators.  Moreover, White testified that he had previously received "several" complaints during his employment with the Department, while there is no record evidence of Grice having received any comparable complaints or violations prior to his infraction.  White Dep. [28-1] at 108–09.  Even White acknowledged in his deposition that the allegedly comparable violations by other officers—including Grice—were "not similar" to his case.  *Id.* at 94.

White nevertheless attempts to meet his burden by arguing that Grice committed a "much more serious crime" and that there was "undisputable" video evidence of his actions.  Pl.'s Resp. [27] at 4–5.  But "[t]he evidence ha[s] to contradict the legitimacy of the City's explanation that the differences between [the two officers] justified the different charges and penalties . . . ." *Polanco v. City of Austin, Tex.*, 78 F.3d 968, 977 (5th Cir. 1996).  And given all the differences in their positions, infractions, cooperation, and history, White has not made a sufficient showing that the differing employment actions were taken under "nearly identical" circumstances.  *See, e.g.*, *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012) (finding employees not similarly situated because plaintiff failed to present evidence that comparators had the same job or responsibilities, reported to the same supervisor, had comparable violation histories, and that their conduct was nearly identical); *Okoye*, 245 F.3d at 514 (finding circumstances not nearly identical where plaintiff had assaulted a co-worker and comparators had not); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (holding that employees who engaged in different violations of company policy were not nearly identical).

The Court therefore concludes that the record evidence, even when viewed in the light most favorable to White, is insufficient to create a jury question whether the City's stated reason

for terminating White's employment was a pretext for racial discrimination.  Defendant's Motion is granted.

IV.     Conclusion

The Court has considered all of the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, the Court finds that Defendant's Motion for Summary Judgment [23] should be granted.  Accordingly, all of White's claims against the City of Richland are hereby dismissed with prejudice.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 19th day of April, 2016.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE